[Civ. No. 17610. Third Dist. Aug. 24, 1978.]

ROYAL GLOBE INSURANCE COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
JAMES FAULKNER, Respondents.

288

**COUNSEL**

Twohy & Brown, Kevin R. Twohy and Erik Frye for Petitioner.

Leep, Saunders, Costello & Asbill and Ben Leep for Respondents.

## OPINION

**PARAS, Acting P. J.**—We issued a writ of review to consider whether the respondent Workers' Compensation Appeals Board erred in denying reconsideration to petitioner Royal Globe Insurance Co., workers' compensation carrier for Frank Fosdick (doing business as Ranchers Irrigation), respondent James Faulkner's employer. Reconsideration was sought on the ground that Royal Globe had ". . . discovered new evidence, material to [it] . . . , which [it] . . . could not with reasonable diligence have discovered and produced at the hearing." The award was based upon Faulkner's claim that on April 6, 1977, in the course and scope of his employment he had injured his back while lifting a valve gate out of an irrigation ditch.

Scope of employment was seriously contested at the hearing on November 22, 1977, and in response to Faulkner's testimony on the subject (by deposition, *infra*), Royal Globe offered several witnesses. (1) Robert Morrison, Fosdick's former foreman (he had changed employers one week before the hearing), testified that in April 1977 Faulkner was off work for about a half month, returned for "a couple of days," then left permanently. Although in prior months Faulkner had complained of "trouble with his back," he never suggested to Morrison that any work-related injury caused him to leave. When he returned for his check "a week or two" before the last days of employment, Faulkner came to the office, saw Morrison, and told him his back was bothering him and that he had "rolled his pickup." (2) Jan O'Connor, a secretary employed by J. D. Canaday Irrigation Systems (which had contracted with Fosdick for pipe installation and used the same office as he), testified that she last saw Faulkner the "first part of April" 1977 when he came to the office to get his check; he was limping and she asked him if he was injured at work, to which he replied in the negative, adding that "it had been an old injury that bothered him; came back once in a while and bothered him quite a bit." (3) It was stipulated that if Fosdick were called as a witness he would testify "that at no time did he receive any information or any report from Mr. Faulkner of an injury on the job. . . . Faulkner did not say anything to him about it that evening, as Mr. Faulkner testified he did, nor at any other time. That he was off work on his own, so far as Mr. Fosdick knows . . . for reasons of his own from on or about April 8, for several weeks, then he came back to work for about three or four or five days and again quit for reasons of his own and without saying anything or making any report to him."

Faulkner's deposition of October 25, 1977, was introduced into evidence by his counsel. There he testified that he was injured at work on April 6, 1977. As he and a person named "Bob" were lifting a valve gate from a ditch about 1 or 2 o'clock in the afternoon, he felt a crunch in the back. He did not remember whether or not he said anything to Bob (Bob was not presented as a witness), but continued to work, finishing the shift at 5 o'clock. When walking to his pickup after work, he saw Fosdick and told him that "I screwed my back up."[1] The next day he telephoned and talked to Fosdick "or Dale, the other guy that works in the office," informing him that he could not get out of bed. He stayed off for three weeks or a month, then returned for about a week and left for the last time. On April 15, he went to a doctor recommended by his "girl friend." He did not have any type of truck accident in April or May 1977 or any other accident apart from the incident of April 6 at work. In addition to the above deposition testimony, Faulkner testified at the hearing of November 22 as follows:

"Q. Okay. Now tell me about the rolling your pickup? Tell the Court. A. Well, that was just a big joke for some of the guys there that always like to top anything you said. So it was just something to say; wait and see how they top that.

"Q. You did mention to some of the co-workers that you had rolled your pickup? A. Yes.

"Q. Have you ever rolled a pickup? A. No, sir."

The foregoing represents the substantial entirety of the evidence bearing on the issue of scope of employment. Although from an appellate viewpoint it strongly suggests a ruling adverse to Faulkner,[2] the board

---

[1]Faulkner was specifically asked: "Q. Did you tell him that you did this *today*? In other words did you tell him *when* you hurt it?
"A. No, I don't think I did." (Italics added.)

[2]At this point we note how graphically this case illustrates the difference between appellate review by the substantial evidence standard and such review by its counterpart, the independent judgment standard. (Cf. Code Civ. Proc., § 1094.5, subd. (c); *Strumsky v. San Diego Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29].) Using the latter test, we would find on appeal that the weight of the evidence supports Fosdick and Royal Globe; using the former, the correct as well as preferable (to us) standard in this type of case (Lab. Code, § 5952, subd. (d)), we would unequivocally affirm. If we seem somewhat critical of the board's conclusion, it is not out of any distaste

had no difficulty in concluding that everyone's testimony was false or inaccurate except that of Faulkner. Accordingly on December 23, 1977, the findings and award were filed, favorable to him.

Nineteen days later, on January 13, 1978, Fosdick and Royal Globe filed with the board a "Petition for Reconsideration on Grounds of New and After Discovered Evidence." (Lab. Code, § 5903, subd. (d).) This petition alleged that the newly discovered evidence "consists of a work diary maintained by MR. FOSDICK in the regular course of his day-to-day business. The diary contains full details of all work performed on each job in each location on a day-to-day basis. The diary is kept for billing purposes and for purposes of informing the owner of the property upon which the work is being performed on a contract basis by the said FOSDICK of the day-to-day progress of the work. The diary is and has always been in the exclusive and personal possession of FRANK FOSDICK, and was not available and its existence was unknown to your petitioners other than FRANK FOSDICK at the time of the hearing on November 22. The diary will show that, although claimant alleges he was injured while lifting and maneuvering a valve gate, in fact the work on the property where this job was being performed had not yet progressed to the point where there were any valve gates or similar equipment on the property, and that it is not possible that applicant could have sustained injury of the kind and in the manner alleged."

Petitioner's showing as to why the diary was not presented at the November hearing consisted of the following sworn statement: "[O]n November 11, 1977, the employer FRANK FOSDICK suffered a disabling heart attack, was hospitalized, and could no longer be contacted either for testimony at the time of the hearing [November 22, 1977] or for further conferences . . . . [¶] FRANK FOSDICK, was the only person involved in this litigation who had the said evidence in his possession and knew of its existence. The existence of the evidence would surely have come to light in further conversations between the undersigned and MR. FOSDICK sometime between November 11 and the date of the hearing November 22. Follow-up communications with the employer witnesses during that time were in fact undertaken and were not culminated until *the morning*

---

for the substantial evidence rule, only out of our personal view of all the evidence, including the "newly discovered evidence" hereinafter described.

of the hearing on November 22 at which time all evidence was reviewed with the available employer/witnesses in preparation for the hearing that afternoon. Because of the incapacitating illness which struck the potential witness, FRANK FOSDICK, on November 11, rendering him hospitalized, isolated and unavailable for further contact, it was impossible for your petitioners to obtain the said evidence and present it at the time of the hearing." (Italics in original.)

On February 9, 1978, the board denied reconsideration on the ground that the petitioners had not proved that they "could not, with reasonable diligence, have discovered and produced . . . ." (Lab. Code, § 5903, subd. (d)), the diary at the November hearing, because they had notice of the manner in which Faulkner claimed to have been injured (lifting an irrigation valve gate), by the latter's deposition of October 25, 1977, by a statement in a medical report of August 8, 1977, and by a copy of an application to the Employment Development Corporation of August 12, 1977. In view of such notice, the board felt that the diary should have been discovered.

■■ Fosdick and Royal Globe claim an abuse of discretion in denying reconsideration.

We do not consider whether the board abused its discretion, for reconsideration could not under any circumstances have been granted. The diary cannot conceivably be deemed "newly discovered evidence," for it was never newly discovered. Fosdick knew of it at all times, having himself created it, and Fosdick was a party to the proceeding before the board.[3] ■■ (See fn. 4.) In fact, Fosdick was a petitioner, so named and designated, in the petition for reconsideration.[4] ■■ The petition for

---

[3]Fosdick could have been relieved of liability pursuant to Labor Code sections 3755-3759, in which event it might have been argued (not necessarily successfully) that he was not a party at the time reconsideration was sought. But this was not done.

[4]Conceptually the employer is the true party to a workers' compensation proceeding, since liability for compensation benefits is imposed directly upon him (see Lab. Code, § 3600); the insurance carrier is but an indemnitor of the employer, and thereby secures *payment* of the benefits (see Lab. Code, § 3700); unlike the liability carrier in a normal tort action, the workers' compensation carrier can be made a party to the litigation by special statute (see Lab. Code, § 3753).

reconsideration was ill-conceived and misbegotten, grounded as it was on newly discovered evidence.[5]

The award is affirmed.

Evans, J., concurred.

A petition for a rehearing was denied September 19, 1978, and petitioner's application for a hearing by the Supreme Court was denied October 18, 1978.

---

[5]We note that Labor Code section 5903, subdivision (b), which allows reconsideration where "the order, decision or award was procured by fraud" might have been used by Royal Globe and Fosdick. Armed with evidence so qualitatively strong as the diary, they could have used it in support of a claim for reconsideration on the ground of fraud, especially when the failure to present it was so clearly excusable. Although it probably would not have brought about any different action by the board, at least we would have been given the power to review the decision.